## Corn v. Merideth.

(Decided November 5, 1914.)

### Appeal from Mercer Circuit Court.

Principal and Agent—Facts Insufficient to Show Agency.—Where the wife owned a farm that was operated and managed by her husband, who was also engaged in speculating in tobacco, the wife, although she would be liable as principal for the acts of her husband in the management of her farm, could not be held responsible for his losses incurred in speculating in tobacco or for his failure to perform contracts growing out of tobacco speculations.

C. E. RANKIN for appellant.

E. H. GAITHER for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellant as plaintiff brought this suit against Winnie Merideth, now appellee, as defendant to recover

from her $210, damages for the alleged breach of a contract involved in the sale of a crop of tobacco.

The contract concerning this tobacco was made between O. F. Merideth, the husband of the defendant, and W. J. Corn. In the petition the plaintiff averred "that at the time of the making of said contract, and for a considerable time before and after that time, O. F. Merideth was acting as the agent of the defendant, Winnie Merideth, carrying on a general business of buying and selling tobacco in Mercer and adjoining counties; that in making the contract purchasing his said crop of tobacco, O. F. Merideth made it as the agent of the defendant, Winnie Merideth, and for her, and he charges that by reason thereby said contract was, and is, the contract of the defendant, Winnie Merideth.

"He states that O. F. Merideth did not disclose to this plaintiff the name of his principal at the time the contract was made nor at any other time, and he only learned of the principal's name when he delivered a portion of his tobacco to the point required by said contract."

In her answer the defendant denied that O. F. Merideth, in the purchase of the tobacco, was her agent, or that she had any interest in or connection with the contract.

The case on the question of agency went to trial before a jury, and on the conclusion of the evidence for the plaintiff, the court directed the jury to find for the defendant. Judgment was accordingly entered dismissing the petition.

It appears from the evidence that Mrs. Merideth owned a farm in Mercer County, and that this farm was largely, if not entirely, managed and operated by her husband, O. F. Merideth, although Mrs. Merideth owned a good deal of stock on the place which she controlled. Mrs. Merideth and her husband each had separate bank accounts in the same bank, her account being kept in her own name and the account of her husband in the name of W. Merideth. Why the account of O. F. Merideth was kept in the name of W. Merideth is not disclosed, but there is no suggestion in the record that it was so kept for any fraudulent or improper purpose or to deceive any person. Indeed, so far as the record shows, O. F. Merideth is solvent and amply able to satisfy the amount alleged to be due in this case.

The plaintiff testified that he made the contract

about which the controversy arose with O. F. Merideth. That he did not know Mrs. Merideth or any one else in the transaction. That he looked to O. F. Merideth for his money, and the name of Mrs. Merideth was not mentioned.

Mrs. Merideth said that she had never given her husband authority to buy tobacco for her and had nothing at all to do with his purchase of tobacco, and had no connection whatever with the contract between the plaintiff and O. F. Merideth. That she let her husband have the farm to make what he could out of it; and that she had some stock and kept a separate bank account to the credit of which she put money received from turkeys and chickens and stock that she sold. That her husband paid the farm expenses and received the proceeds of stock and produce on the farm except such as belonged to her.

The cashier of the bank in which the accounts were kept testified that O. F. Merideth's account was kept in the name of W. Merideth, and that he generally had to his credit an average of $1,500, while the account of Mrs. Merideth ran from $75 to $250.

In other words, the substance of the evidence is that O. F. Merideth managed his wife's farm, paid the farm expenses and received the proceeds of all the stock and produce sold from the farm except some stock and fowls that were owned by Mrs. Merideth. That, in addition to his farming operations, he was engaged in speculating in tobacco. There is not a particle of evidence that Mrs. Merideth ever had the slightest connection with his tobacco speculations or that any part of the money realized from the sale of tobacco or made in these tobacco speculations was used in improving the farm or defraying the expenses of the farm or family or in any other way.

So that unless the mere fact that O. F. Merideth operated the farm of his wife is sufficient to charge her as principal in his tobacco speculations, there is no circumstance or fact in the record sufficient to establish agency or to show that O. F. Merideth was acting as the agent of his wife in the purchase of this tobacco.

Mrs. Merideth turned her farm over to her husband to manage and operate, and this fact would make her liable as principal for any obligations incurred by him in the conduct or management of the farm, but his tobacco speculations were independent operations from

the management of the farm and so far as appears had no connection with it. Speculations in tobacco or other products, or on the stock market, cannot well be said to have such relation with the business of operating a farm as to fix liability on Mrs. Merideth for losses incurred in these speculations. His agency, we think, was confined to matters relating to the operation and management of the farm and did not extend to outside ventures in which he engaged.

We think the plaintiff failed to make out a case and the judgment of the lower court is affirmed.